IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 3:20-cr-0020 |
| v. | ) |
| | ) |
| RAQUEL RIVERA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**APPEARANCES:**

**Gretchen C.F. Shappert, United States Attorney**
**Nathan Brooks, AUSA**
United States Attorney's Office
St. Thomas, U.S.V.I.
    *For the United States of America,*

**Matthew Campbell, Federal Public Defender**
**Melanie Lark Turnbull, AFPD**
Office of the Federal Public Defender
St. Thomas, U.S.V.I.
    *For Raquel Rivera.*

## MEMORANDUM OPINION

**MOLLOY, J.**

    **BEFORE THE COURT** is Raquel Rivera's motion to suppress all statements made on April 22, 2020. (ECF No. 20.) For the reasons stated below, the Court will deny Raquel Rivera's motion.

### I. FACTUAL AND PROCEDURAL HISTORY

    The relevant facts in this case that pertain to the motion before the Court were adduced during the course of a December 1, 2020 omnibus hearing in this matter. The Court heard testimony from a single witness, Homeland Security Investigations ("HSI") Special Agent Michael Fogle ("Agent Fogle").

    Agent Fogle testified that, on April 22, 2020, he was contacted by Customs and Border Protection ("CBP") officers after they had discovered substances suspected to be marijuana

in two checked bags claimed by Raquel Rivera ("Rivera") at the Cyril E. King Airport in St. Thomas, U.S. Virgin Islands.

When Agent Fogle arrived at the airport, Rivera was sitting at a table in the center of an area which CBP refers to as "Hard Secondary." Agent Fogle testified that Hard Secondary is a specific room where CBP officers take individuals to perform more thorough searches of those individuals' luggage. According to Agent Fogle, Hard Secondary is a well-lit room that is approximately one-third to half the size of St. Thomas Courtroom 1 and has windows and doors that lead into the CBP offices and the public area of the airport.

After Agent Fogle arrived, he and CBP Officer Sharissa Smith ("Officer Smith") sat down with Rivera to interview her. At that time and during the interview, there were approximately five to six other CBP officers moving in and out of Hard Secondary while working on reports related to the seizure of the suspected marijuana. Agent Fogle began the interview by asking Rivera several preliminary biographical questions, such as her name, date of birth, and where she was from. Agent Fogle also testified that he offered Rivera some water. Thereafter, Agent Fogle read Rivera her *Miranda* warnings and presented Rivera with a waiver of rights form. When Agent Fogle asked Rivera if she understood her rights as they had been read to her, Rivera responded affirmatively. Agent Fogle testified that Rivera did not sign the waiver of rights form when he asked her if she would do so. Subsequently, Rivera made statements to Agent Fogle and Officer Smith. The interview lasted approximately 30 minutes to an hour, prior to which Rivera had been detained for approximately two hours. Rivera was not physically restrained at any time prior, during, or after the interview. After the interview, Rivera was not arrested and was allowed to leave.

On May 22, 2020, the United States filed an Information charging Rivera with two counts: 1) conspiracy to possess with intent to distribute less than fifty kilograms of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(D); and 2) possession with intent to distribute less than fifty kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D).

On July 10, 2020, Rivera moved to suppress her April 22, 2020 statements to law enforcement officers, arguing that her statements were taken in violation of *Miranda* and the Fifth Amendment.

On July 24, 2020, the United States filed an opposition to Rivera's motion to suppress.

## II.    LEGAL STANDARDS

To safeguard an individual's Fifth Amendment privilege against self-incrimination, the Supreme Court has held that the government may not introduce statements made by an individual who is subject to "custodial interrogation" unless he first has been given his *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436, 445 (1966). The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*

Since *Miranda*, the Third Circuit has set forth a two-pronged test to facilitate the determination of whether there has been "custodial interrogation." First, a court must "determine whether the suspect was in 'custody.' . . . If the suspect was in 'custody,' the court then must decide whether the police interrogated him." *United States v. Mesa*, 638 F.2d 582, 585 (3d Cir. 1980) (citing *Orozco v. Texas*, 394 U.S. 324 (1969) and *Rhode Island v. Innis*, 446 U.S. 291 (1980)).

"An individual is in custody when he or she has been 'deprived of his [or her] freedom of action in any significant way.'" *United States v. Jacobs*, 431 F.3d 99, 104 (3d Cir. 2005) (alteration in original) (citations omitted). The Third Circuit has explained that there are at least three different tests for whether a person is in custody:

> (1) when the person has been deprived of her or his freedom in some significant way; (2) when a reasonable person would perceive that she or he was not at liberty to terminate the interrogation and leave; and (3) when there is a restraint on the person's freedom of movement of the degree associated with a formal arrest.

*Id.* at 105. "[T]he determination of custody is an objective inquiry (that is, what a reasonable person would believe) based on the circumstances of the interrogation." *Id.*

The other component for *Miranda* purposes is interrogation, which has been defined as any "express questioning or its functional equivalent." *Innis*, 446 U.S. at 300–301. This

definition includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.*

Once a suspect has been Mirandized, the suspect must "unambiguously" invoke his right to remain silent or his right to counsel in order for those protections to attach. *See Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (holding that a suspect had to unambiguously invoke his right to silence in order for *Miranda* to require law enforcement to cease questioning); *Davis v. U.S.*, 512 U.S. 452, 461 (1994) (requiring a suspect to unambiguously invoke his right to counsel). The two-pronged test for voluntary, knowing, and intelligent waiver of one's *Miranda* rights is that

> [f]irst, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986). The Third Circuit has explained that

> [t]his inquiry requires us to consider the totality of the circumstances surrounding the interrogation, which includes examining the events that occurred and the background, experience, and conduct of the defendant. *Miranda* rights will be deemed waived only where the totality of the circumstances "reveal[s] both an uncoerced choice and the requisite level of comprehension."

*United States v. Sriyuth*, 98 F.3d 739, 749 (3d Cir. 1996) (quoting *Moran*, 475 U.S. at 421) (citations omitted).

Simply remaining silent is insufficient to invoke the right to remain silent. *Berghuis*, 560 U.S. at 380-82. Ambiguous or equivocal statements are also insufficient to invoke one's *Miranda* rights. *Id.* at 381. Generally, refusing to sign a *Miranda* waiver alone is also not an invocation of the right to remain silent. *See United States v. Plugh*, 648 F.3d 118, 125 (2d Cir. 2011) ("While his refusal to sign the form presented to him upon arrest may have unequivocally established that he did not wish to waive his rights *at that time,* his concurrent statements[—'I am not sure if I should be talking to you' and 'I don't know if I need a

lawyer'—] made equally clear he was also not seeking to *invoke* his rights and thus cut off all further questioning at that point."); *United States v. Binion*, 570 F.3d 1034, 1041 (8th Cir. 2009) ("Refusing to sign a written waiver of the privilege against self incrimination does not itself invoke that privilege and does not preclude a subsequent oral waiver.").

Irrespective of *Miranda*, "[t]he Self–Incrimination Clause of the Fifth Amendment guarantees that no person 'shall be compelled in any criminal case to be a witness against himself.'" *Withrow v. Williams*, 507 U.S. 680, 688 (1993) (quoting U.S. Const., amend. V). This protection bars the introduction of statements to law enforcement that are not "voluntary." *Id.* A statement is voluntary only when the speaker's "will was not overborne," and the statement was the "product of an essentially free and unconstrained choice by its maker, that was the product of a rational intellect and a free will." *United States v. Swint*, 15 F.3d 286, 289 (3d Cir. 1994) (internal quotation marks omitted).

"[C]ourts look to the totality of circumstances to determine whether a confession was voluntary." *Withrow*, 507 U.S. at 693. Potential circumstances affecting the voluntariness of statements made include: (1) the length and location of the interrogation; (2) the defendant's maturity, physical condition, mental health and level of education; and (3) whether *Miranda* warnings were given. *Swint*, 15 F.3d at 289. "*[T]he* crucial element" of the inquiry, however, is "police coercion." *Withrow*, 507 U.S. at 693 (emphasis added). "Unless there is 'police conduct causally related to the confession,' a confession is considered voluntary. Thus, a court will not hold that a confession was involuntary unless it finds that it was the product of 'police overreaching.'" *Swint*, 15 F.3d at 289 (citations omitted) (quoting *Connelly,* 479 U.S. at 164); *see also United States v. Flemmi*, 225 F.3d 78, 91 (1st Cir. 2000) ("[T]he Supreme Court has confined the voluntariness concept by holding that only statements procured by *coercive official tactics* should be excluded as involuntary." (original alterations and internal quotation marks omitted)).

### III.     DISCUSSION

Rivera seeks to suppress all statements made during her interview with Agent Fogle and Officer Smith at the Cyril E. King Airport on April 22, 2020.[1] The parties do not dispute that Rivera was subject to a custodial interrogation.[2] As such, the Court must first determine whether Agent Fogle Mirandized Rivera prior to her statements. In this respect, the United States presented evidence—in the form of Agent Fogle's interview notes, a standard waiver of rights form,[3] and Agent Fogle's written report of the interview—and Agent Fogle's uncontroverted testimony that Agent Fogle read the standard *Miranda* warnings to Rivera at the start of the interview. Nevertheless, Rivera argues that the Court should find Agent Fogle's testimony unreliable because (1) there are no video or audio recordings of Agent Fogle administering Rivera her *Miranda* warnings, (2) Agent Fogle's written report of the interview does not mention whether he gave Rivera a copy of the waiver of rights form or that Rivera refused sign, and (3) the United States did not present a waiver form that was signed by Rivera or otherwise contained an indication of her refusal to sign. Significantly, the Court is unaware of any requirement that law enforcement record or document its administration of *Miranda* warnings in any particular manner. Further, the lack of such evidence does not controvert Agent Fogle's sworn testimony. As such, the Court will decline Rivera's invitation to find Agent Fogle's testimony unreliable. The Court is satisfied that Rivera was Mirandized prior to making any statements.

The Court must next determine whether Rivera validly waived her *Miranda* rights. Here, Agent Fogle read the standard *Miranda* warnings to Rivera at the start of the interview. Agent Fogle testified that when he asked Rivera whether she understood her rights as he had read them to her, she responded affirmatively. Agent Fogle also presented Rivera with a waiver of rights form that she refused to sign. There is no evidence that Rivera explicitly invoked her right to remain silent or her right to counsel. Moreover, Agent Fogle testified

---

[1] Rivera conceded at the December 1, 2020 omnibus hearing in this matter that she was not challenging any statements made to CBP officers prior to the interview with Agent Fogle and Officer Smith.
[2] Indeed, Agent Fogle testified that Rivera was not free to leave during the interview.
[3] The standard waiver of rights form introduced by the United States was not the actual form presented to Rivera on April 22, 2020. Nevertheless, Agent Fogle testified that the form was a copy of the same type of form used on April 22, 2020.

that there was no indication that Rivera did not understand her rights, was intoxicated, or was otherwise impaired in any way. Thereafter, Rivera made statements in response to questioning by Agent Fogle. Given these circumstances, the Court is satisfied that Rivera was aware of both the nature of the rights being abandoned and the consequences of the decision to abandon them. *Cf. Berghuis*, 560 U.S. at 375, 385-86 (holding a *Miranda* waiver was valid when the defendant "received a written copy of the Miranda warnings . . . could read and understand English . . . [and] was given time to read the warnings," declined to sign the form, and thereafter answered questions from law enforcement).

Nevertheless, Rivera argues that her waiver was not voluntary because the totality of the circumstances indicate that Rivera's waiver was the product of intimidation. Specifically, Rivera argues that her detention for two hours prior to the interview, during which time she encountered up to six armed CBP officers, coupled with the length of the interview—a half hour to an hour—resulted in a coercive environment. The Court finds no basis to conclude that such circumstances coerced Rivera's choice to waive her rights. Indeed, Rivera was in a fairly large, well-lit room with windows and doors into both the CBP offices and the public area of the airport. While she encountered various armed CBP officers prior to the interview, there is no indication that any officer's weapon was brandished, let alone unholstered. Further, there is no indication that any officer threatened Rivera in any way. When the interview began, Agent Fogle offered Rivera some water. In total, Rivera's detention—the period prior to the interview in conjunction with the interview—lasted at most three hours. Significantly, "there is no authority for the proposition that a[] [three-hour] interrogation . . . is inherently coercive." *Berghuis*, 560 U.S. at 387. The totality of the circumstances here reveals that Rivera's waiver of her rights was the product of a free and deliberate choice. *Cf. Berghuis*, 560 U.S. at 386-87 (concluding that the defendant waived his *Miranda* rights where there was no evidence the defendant was threatened by police, the interrogation was conducted in a standard-sized room in the middle of the afternoon, and the interrogation lasted three hours); *United States v. Jones*, 747 F. App'x 131, 135 (4th Cir. 2018) (concluding that, where "[n]o officer had a weapon unholstered" and the defendant did "not assert that he was threatened or assaulted," the defendant's "waiver was not coerced even though there

were three officers in the motel room when the officer advised [the defendant] of his *Miranda* rights"). Thus, the Court concludes that Rivera made a voluntary, knowing, and intelligent waiver of her *Miranda* rights.

Finally, the Court also concludes that Rivera's statements were made voluntarily. As discussed above, Rivera was given her *Miranda* warnings, and there is no evidence that the length or location of the interview were inherently coercive. There is also no indication that Rivera's maturity, physical condition, mental health, or level of education were such as might cause her to make involuntary statements. Finally, there is no evidence of any conduct by law enforcement that was coercive. The totality of the circumstances reveals that Rivera's statements were voluntary. *Cf. Berghuis*, 560 U.S. at 386-87 (concluding that the defendant's statement was voluntary where there was no evidence the defendant was threatened by police, the interrogation was conducted in a standard-sized room in the middle of the afternoon, and the interrogation lasted three hours).

## IV. CONCLUSION

For the reasons set forth above, the Court concludes the statements made by Rivera on April 22, 2020, to Agent Fogle and Officer Smith were voluntary and taken in compliance with the strictures of the Fifth Amendment. As such, the Court will deny Rivera's motion to suppress. An appropriate order follows.

**Dated:** December 23, 2020                                    */s/ Robert A. Molloy*
                                                                                                **ROBERT A. MOLLOY**
                                                                                                 **District Judge**