# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:20-cr-0020 |
| v. ) | |
| ) | |
| RAQUEL RIVERA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**APPEARANCES:**

**Gretchen C.F. Shappert, United States Attorney**
**Nathan Brooks, AUSA**
**Natasha Baker, AUSA**
United States Attorney's Office
St. Thomas, U.S.V.I.
　*For the United States of America,*

**Matthew Campbell, Federal Public Defender**
**Melanie Lark Turnbull, AFPD**
Office of the Federal Public Defender
St. Thomas, U.S.V.I.
　*For Raquel Rivera.*

## MEMORANDUM OPINION

**MOLLOY, C.J.**

**BEFORE THE COURT** is Raquel Rivera's motion for a judgment of acquittal due to insufficiency of the evidence. (ECF No. 81.) For the reasons stated below, the Court will deny Rivera's motion.

### I.　FACTUAL AND PROCEDURAL HISTORY

On April 22, 2020, Raquel Rivera ("Rivera") arrived from Miami, Florida, at the Cyril E. King Airport ("CEK Airport") in St. Thomas, U.S. Virgin Islands. After Customs and Border Protection ("CBP") officers discovered substances suspected to be marijuana in two checked bags claimed by Rivera, she was detained and questioned. Officers also conducted a search

of the two checked bags and found 12 vacuum sealed packages containing a green leafy substance suspected to be marijuana.

On May 22, 2020, the United States filed an Information charging Rivera with two counts: 1) conspiracy to possess with intent to distribute less than fifty kilograms of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(D); and 2) possession with intent to distribute less than fifty kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D). Thereafter, on November 19, 2020, a federal grand jury returned an indictment charging Rivera with the same two counts.

On May 11, 2021, the trial in this matter commenced. The United States presented six witnesses—CBP Officer James Vanterpool ("Officer Vanterpool"), CBP Officer Troy Williams ("Officer Williams"), American Airlines General Manager Thomas Berger ("Berger"), Homeland Security Investigations ("HSI") Special Agent Michael Fogle ("Agent Fogle"), CBP Officer Sharissa Braithwaite ("Officer Braithwaite"), and CBP chemist Rafael Martinez ("Martinez").

Officer Vanterpool testified that he encountered Rivera at the CEK Airport on April 22, 2020. *See* Tr. at 26:11-23, May 11, 2021, ECF No. 85. After Rivera collected two checked bags from the baggage claim area, Officer Vanterpool and another officer escorted her to CBP's secondary inspection area. At the inspection area, Officer Vanterpool and Officer Williams gave Rivera a customs declaration form to fill out. *Id.* at 36:16-25; 78:10-17. On the form, Rivera marked that she was not bringing in any fruits, vegetables, plants, seeds, or food.[1] Additionally, when Officer Vanterpool instructed Rivera to itemize the bags she claimed ownership of on the form, Rivera claimed both checked bags. *Id.* at 41:12-22. Officer Williams testified that Rivera also verbally claimed both bags and all their contents. *Id.* at 78:18-23.

After conducting an x-ray of the bags, the CBP officers decided to physically search them. Before opening the bags, Officer Vanterpool and Officer Williams again asked Rivera if the bags were hers and if she packed them herself or if anyone had given her anything to

---

[1] The customs declaration form was admitted as Government's Exhibit 2.

pack. At that time, Rivera denied ownership of the grey bag, which had a baggage tag in her name.[2] *Id.* at 49:16-50:11; 55:7-15. Rivera claimed that the grey bag belonged to her friend Amber Nieves ("Nieves"). *Id.* at 50:20-25; 79:8-13. According to Rivera, Nieves had told Rivera that the grey bag had groceries in it. *Id.* at 51:18-22; 79:13-16. Upon searching the bags, the officers found six vacuum sealed packages containing a green leafy substance in each bag. The packages were wrapped in clothing and concealed among the other clothes.[3] *Id.* at 61:10-15.

After the packages were discovered, Agent Fogle and Officer Braithwaite interviewed Rivera. Agent Fogle and Officer Braithwaite each testified that Rivera stated that an individual named Bebar had asked her to pick up Nieves's bag because Nieves had missed her flight to St. Thomas. *Id.* at 113:17-114:1; Tr. at 11:13-20, May 12, 2021, ECF No. 86. The United States also present testimony from Berger, American Airlines' General Manager for the Virgin Islands. Berger testified that, according to American Airlines' records, both Rivera's and Nieves's tickets were used and that Rivera and Nieves both traveled on the same flight, the only flight from Miami to St. Thomas on April 22, 2020. Tr. at 101:9-102:11, May 11, 2021, ECF No. 85; *id.* at 103:23-104:18; 105:4-9; 99:6-11. Agent Fogle and Officer Braithwaite also each testified that Rivera stated that an individual she knew as "Uncle" or "Tio" packed her bag and that she thought it contained groceries. Tr. at 116:8-16, May 11, 2021, ECF No. 85; Tr. at 12:11-17, May 12, 2021, ECF No. 86.

Finally, the United States presented testimony from CBP chemist Martinez. Martinez testified that he has tested substances for the presence of marijuana thousands of times. Tr. at 17:19-23, May 12, 2021, ECF No. 86. With respect to this case, Martinez testified that he took samples from each of the twelve packages to test. *Id.* at 20:17-23. Martinez performed three tests widely accepted in the field of chemistry on these samples: a color test, a microscopy test, and gas chromatography coupled with mass spectrometry. *Id.* at 20:24-21:6. With respect to the color test, Martinez explained that if the tested substance contains tetrahydrocannabinol ("THC"), when mixed with various reagents, the resulting solution will

---

[2] A picture of the baggage tag on the grey bag was admitted as Government's Exhibit 10.
[3] Pictures of the packages were admitted as Government's Exhibits 12-14 and 16-32.

turn purple or slight grey. *Id.* at 22:1-17. With respect to the microscopy test, Martinez explained that it consists of looking at the plant material under a microscope and trying to identify various physical characteristics of marijuana. *Id.* at 22:21-23:4. Finally, Martinez testified that gas chromatography coupled with mass spectrometry creates a unique mass spectrum that makes a compound identifiable. *Id.* at 23:5-24:10. Martinez also testified that his lab has a test that is capable of measuring the concentration of THC in a sample, but he did not perform that test. *Id.* at 25:15-25. From the three tests performed, Martinez concluded that the substance possessed by Rivera in this case was marijuana. *Id.* at 24:12-19.

On May 12, 2021, at the conclusion of evidence, Rivera moved for a judgment of acquittal. The Court took the motion under consideration. Thereafter, the jury found Rivera not guilty on Count One—conspiracy to possess with intent to distribute less than fifty kilograms of marijuana—and guilty on Count Two—possession with intent to distribute less than fifty kilograms of marijuana.

On May 14, 2021, Rivera renewed her motion for a judgment of acquittal. The United States filed an opposition to her motion on May 28, 2021. On June 11, 2021, Rivera filed a reply.

## II.  LEGAL STANDARD

A judgment of acquittal is appropriate under Federal Rule of Criminal Procedure 29 ("Rule 29") if, after reviewing the record in a light most favorable to the prosecution, the Court determines that no rational jury could find proof of guilt beyond a reasonable doubt. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006); *see also United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (explaining that a district court must "'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence'") (quoting *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001)).

A finding that there is insufficient evidence to support a conviction should be "'confined to cases where the prosecution's failure is clear.'" *Smith*, 294 F.3d at 477 (quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)). "Courts must be ever vigilant in the

*United States v. Rivera*
Case No. 3:20-cr-0020
Memorandum Opinion
Page 5 of 9

context of [Rule] 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (citations omitted); *see also United States v. Ashfield*, 735 F.2d 101, 106 (3d Cir. 1984) ("Our task is not to decide what we would conclude had we been the finders of fact; instead, we are limited to determining whether the conclusion chosen by the fact finders was permissible.").

The government may sustain its burden entirely through circumstantial evidence. *Bobb*, 471 F.3d at 494; *see also United States v. Wexler*, 838 F.2d 88, 90 (3d Cir. 1988). A motion for a judgment of acquittal should be granted when there is a "total absence of evidence that [the] defendant had any connection" with the crimes alleged and proved. *United States v. Darrell*, 629 F.2d 1089, 1091 (5th Cir. 1980) (conviction reversed with directions to enter judgment of acquittal in mail fraud case, noting there was little Fifth Circuit precedent saying what evidence would permit an inference of the defendant's identity).

### III. DISCUSSION

Rivera argues that she is entitled to a judgment of acquittal because no reasonable jury could find that she possessed marijuana as defined by the Agriculture Improvement Act of 2018, Pub. L. 115-334, (the "Farm Bill").

On December 20, 2018, the Farm Bill was signed into law. The Farm Bill changed the statutory definition of marijuana to exclude hemp:

> (A) Subject to subparagraph (B), the term "marihuana" means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin.
>
> (B) The term "marihuana" does not include—
>
>> (i) hemp, as defined in section 297A of the Agricultural Marketing Act of 1946;
>>
>> . . .

21 U.S.C. § 802(16). Hemp is defined as

> the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and

salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.

7 U.S.C. § 1639o(1).

Given this definition, Rivera argues that the evidence in this matter must establish, and fails to establish, that the THC content of the substance at issue is greater than 0.3%. As such, Rivera contends that the Court must enter a judgment of acquittal.

"Both marijuana and hemp are plants of the *Cannabis sativa* species, but they differ dramatically in the quantity of the psychoactive substance THC, or delta-9 tetrahydrocannabinol, that they contain." *United States v. Bautista*, 989 F.3d 698, 704 (9th Cir. 2021). "Unlike marijuana, hemp contains 'only a trace amount of the THC contained in marijuana varieties grown for psychoactive use.'" *Id.*; *see also United States v. Bignon*, No. 18-CR-783 (JMF), 2019 U.S. Dist. LEXIS 25230, at *7-8 (S.D.N.Y. Feb. 15, 2019) (citing Gero Leson et al., *Evaluating the Impact of Hemp Food Consumption on Workplace Drug Tests*, 25 J. of Analytical Toxicology 691, 692 (Nov./Dec. 2001); *accord The Health Effects of Cannabis and Cannabinoids: The Current State of Evidence and Recommendations for Research*, National Academies of Sciences, Engineering, and Medicine, at *38 & n.6 (2017), *available at* https://doi.org/10.17226/24625) (explaining that "hemp and marijuana are 'varieties of the same species, *Cannabis sativa L.*'" where "[t]he primary difference is that marijuana has a higher concentration of the psychoactive compound cannabinoid delta 9 tetrahydrocannabinol, more commonly known as THC").

Significantly, "[t]he prosecution 'may establish the identity of a drug through cumulative circumstantial evidence.'" *Griffin v. Spratt*, 969 F.2d 16, 22 n.2 (3d Cir. 1992) (quoting *United States v. Schrock*, 855 F.2d 327, 334 (6th Cir. 1988)). "'So long as the government produces sufficient evidence, direct or circumstantial, from which the jury is able to identify the substance beyond a reasonable doubt, the lack of scientific evidence is not objectionable.'" *Id.*; *see also United States v. Stewart*, 179 F. App'x 814, 818 (3d Cir. 2006) (quoting *United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir. 1976)) (explaining that "[i]t is well-established that 'lay testimony and circumstantial evidence may be sufficient, without the introduction of an expert chemical analysis, to establish the identity of the substance involved in an alleged narcotics transaction'"); *United States v. Scott*, 725 F.2d 43, 45 (4th Cir.

1984) (explaining that the character of a substance "may be established circumstantially by lay testimony and, provided such circumstantial evidence is adequate, the determination whether the substance in question is within the statutory prohibition is one for the jury"); *United States v. Harrell*, 737 F.2d 971, 978 (11th Cir. 1984) (explaining that direct evidence is not required, and circumstantial evidence is sufficient to prove the identity of a controlled substance); *United States v. Sanchez-DeFundora*, 893 F.2d 1173, 1175 (10th Cir. 1990) (same); *United States v. Osgood*, 794 F.2d 1087, 1095 (5th Cir. 1986) (same).

This Court is not aware of any federal court of appeal decision post-Farm Bill addressing a Rule 29 challenge to the sufficiency of the evidence with respect to identifying a substance as marijuana, not hemp. One court of appeal has addressed whether there was sufficient evidence to find the substance at issue was marijuana under the lower standard of preponderance of the evidence required to apply a sentencing enhancement. *See United States v. Rembert*, 807 F. App'x 953, 956 (11th Cir. 2020) (concluding that the district court did not clearly err in finding the substance was marijuana and not hemp by a preponderance of the evidence where the defendant was an admitted daily smoker of marijuana, had previous convictions for possession of marijuana, the suspected marijuana had been ground and prepared to be smoked by a user, and other items found with the substance—e.g. a digital scale, empty plastic baggies, and a loaded gun—were consistent with marijuana trafficking).

Here, the government presented evidence from CBP chemist Martinez with respect to three tests that he conducted on samples from the substance at issue in this matter. Martinez concluded from those tests that the substance was marijuana. While Martinez acknowledged that the first test—the color test—merely indicates the presence of THC, not its concentration in the substance tested, Martinez also performed two other tests. According to Martinez, the second test—the microscopy test—permits an individual to identify various physical characteristics of marijuana. Further, the third test—gas chromatography coupled to mass spectrometry—produces a unique mass spectrum that identifies a compound. Martinez based his conclusion that the substance was marijuana on all three tests.

Notably, Martinez's testimony regarding the microscopy test and its ability to permit an individual to identify various physical characteristics of marijuana was unchallenged. While the statutory definition of marijuana distinguishes it from hemp based on a threshold THC concentration, that does not compel the conclusion that THC concentration is the only physical or chemical distinction between marijuana and hemp. Indeed, Martinez testified that he concluded the substance was marijuana based in part on a test from which he could identify the physical characteristics of marijuana. Rivera protests that "Martinez admitted that he was neither a botanist nor a horticulturist" and that "[t]here was no testimony from Mr. Martinez regarding the appearance of the substance that would differentiate it from . . . [hemp]." Mot. for J. of Acquittal at 9, ECF No. 81. Significantly, an expert may be qualified to give an opinion based on experience rather than education. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Here, Martinez testified that he has tested for the presence of marijuana thousands of times. Additionally, Rivera never challenged Martinez's conclusion at trial with respect to the microscopy test's ability to distinguish marijuana from hemp.

Martinez's testimony did not stand alone. The government also presented other circumstantial evidence, which, when coupled with Martinez's conclusion, provided sufficient evidence here for a reasonable jury to conclude that the substance as issue was marijuana rather than hemp.[4] Rivera falsely declared that she was not bringing in any fruits, vegetables, plants, seeds, or food on her customs declaration form. Contradicting this declaration, Rivera later claimed that she thought the bags contained groceries. Additionally, after claiming ownership of the gray bag, Rivera renounced such ownership—claiming the bag belonged to her friend Nieves—despite the baggage tag in Rivera's name. Rivera further claimed that her friend Nieves was not on Rivera's flight despite American Airlines' records contradicting this fact. A rational jury could infer that Rivera engaged in such deceitful conduct because she possessed an illegal, rather than legal, substance. *Cf. Scott*, 725 F.2d

---

[4] The United States notes that the jury also had the opportunity to smell the substance at issue when all twelve packages were introduced in evidence. Because there is no record evidence regarding whether marijuana has a distinct odor and what such odor smells like, the jury's opportunity to smell the substance at issue does not factor into the Court's conclusion that a rational jury could find that the substance was marijuana beyond a reasonable doubt.

*United States v. Rivera*
Case No. 3:20-cr-0020
Memorandum Opinion
Page 9 of 9

at 46 (holding that the circumstantial evidence was sufficient to permit a jury to conclude that the substance possessed was illicit where such circumstantial evidence included devious and furtive behavior with respect to transactions involving the substance).

### IV.  CONCLUSION

For the reasons set forth above, the Court concludes that a rationale jury could conclude beyond a reasonable doubt that Rivera possessed marijuana. As such, the Court will deny Rivera's motion for a judgment of acquittal. An appropriate order follows.

**Dated:** August 11, 2021              */s/ Robert A. Molloy*
                                         **ROBERT A. MOLLOY**
                                         **Chief Judge**